**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | | |
|---|---|---|
| WILLIAM A. TACCINO, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. WMN09CV2921 |
| ALLEGANY COUNTY GOVERNMENT, | * | |
| et al. | | |
| | * | |
| Defendants | | |

\* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS TRI-COUNTY COUNCIL AND MARC C. MALEC'S**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS OR**
**IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT**

Defendants Tri-County Council[1] and Marc C. Malec[2], by their attorneys,

FERGUSON, SCHETELICH & BALLEW, P.A., Robert L. Ferguson, Jr. and Michele Z.

Blumenfeld, pursuant to Fed.R.Civ.P. 12(b)(6), 12(d) and 56 and Local Rule 105.1,

hereby submit this Memorandum of Law in Support of their Motion to Dismiss or in the

Alternative, Motion for Summary Judgment.[3]

## I.      STATEMENT OF THE CASE

Plaintiff has filed a thirty-nine (39) count Complaint against Defendants Tri-

County Council for Western Maryland, Inc. ("TCC") and Mark C. Malec ("Malec")

among fifteen (15) other Defendants.  Six (6) of the thirty-nine (39) counts are directed at

Defendants TCC and Malec as follows: Count VIII – Aiding and Abetting; Count IX –

---

[1] Plaintiff has named "Tri-County Council" as a Defendant in his Complaint.  The correct
legal name of this entity is Tri-County Council for Western Maryland, Inc.
[2] Plaintiff's Complaint names "Marc C. Malek" as a Defendant.  The correct spelling is
Mark C. Malec.
[3] "If, on a motion under Rule 12(b)(6) or 12 (c), matters outside the pleadings are
presented to and not excluded by the court, the motion must be treated as one for
summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).

Aiding and Abetting (Damages); Count X – Misappropriation, Misdirection or Misuse Interfering With Use of Government Funds; Count XI - Misappropriation, Misdirection or Misuse Interfering With Use of Government Funds (Damages); Count XXXVI – Conspiracy Against Rights, Theft By Scheme; Count XXXVII – Conspiracy Against Rights (Damages).  The six counts essentially attempt to set forth three causes of action: (1) aiding and abetting; (2) misappropriation of Government funds; and (3) conspiracy. Of the counts asserted against TCC and Malec, two (misappropriation and conspiracy) fail to state a recognized cause of action under Maryland law, and all are not grounded in law or fact.

The factual allegations asserted against Defendants TCC and Malec are brief and conclusory.  Defendants TCC and Malec are referenced in only four (4) of the eighty-six (86) paragraphs that comprise the Statement of Facts set forth in Plaintiff's Complaint. See Plaintiff's Complaint at ¶¶ 38, 41, 48 and 117.   Essentially, Plaintiff contends that TCC receives funding from federal, state and local governments and in turn grants these funds to new businesses in the Western part of Maryland.  See Plaintiff's Complaint at ¶ 26.  He alleges that Defendant Mark Malec was a Director of TCC.  See Plaintiff's Complaint at ¶ 27.  Plaintiff claims he met with Malec to discuss financing options for his start-up business and Malec allegedly suggested that Plaintiff apply for a Small Business Administration ("SBA") loan.  See Plaintiff's Complaint at ¶ 38.  Plaintiff alleges that he fulfilled all necessary requirements to obtain an SBA loan and that it was wrongfully denied by TCC.  See Plaintiff's Complaint at ¶ 48.  He sets forth no factual allegations in support of his conclusory allegations that he was a qualified candidate.  He further contends that the loan denial was the result of a "conflict of interest between Allegany

County Commissioners in their illegal acquisition of Plaintiff's property" and the existence of a lien on the property, allegedly placed by TCC. See Plaintiff's Complaint at ¶ 48. Again, he sets forth no factual allegations in support of these conclusory assertions.

TCC is a regional economic development organization representing Allegany, Garrett, and Washington counties in Western Maryland. (Exhibit 1, Affidavit of Leanne Mazer, Executive Director of TCC). It provides assistance with business development and expansion efforts in Western Maryland. (Exhibit 1). TCC is structured as a council of governments with members representing both the public and private sectors. (Exhibit 1). Plaintiff alleges that Defendant Mark Malec was a Director of TCC. Mark Malec has never held the position of Director of TCC. (Exhibit 1). Rather, in 2007, Mark was employed as a Business Counselor for Tri-County Council for Western Maryland, Inc. (Exhibit 1).

Plaintiff, William A. Taccino applied for a loan through TCC's Revolving Loan Fund Program ("TCC RLF") on April 11, 2007. (Exhibits 1 and 1A, RLF Application). The TCC RLF includes the Rural Enterprise Loan Fund, the fund to which Plaintiff's application was submitted. (Exhibit 1). The Rural Enterprise Loan Fund was established as a loan to Tri-County Council from the United States Department of Agriculture – Rural Development, under the Intermediary Relending Program for the purpose of making loans to create and/or save jobs in Allegany, Garrett and Washington Counties. (Exhibit 1).

After the TCC RLF application form is submitted, it is analyzed by staff and the Rural Enterprise Loan Review Committee. (Exhibit 1). The Rural Enterprise Loan Review Committee is comprised of five members. (Exhibit 1). Defendant Malec was

never a member of the Rural Enterprise Loan Review Committee.  (Exhibit 1).  Plaintiff's RLF application was reviewed by the Rural Enterprise Loan Review Committee. (Exhibit 1). The staff recommendation to deny William Taccino's RLF application was affirmed by a majority of the members of the committee and a letter of denial was sent to William Taccino on June 22, 2007.  (Exhibit 1).

**[  REDACTED  ]**

Plaintiff planned to start an antique car restoration business in Allegany County, Maryland with the RLF loan funds.  The funds were to be used to purchase the property at issue in this lawsuit, to acquire equipment and to be used for working capital. (Exhibits 1 and 1A).   The real property intended to be acquired with the RLF funds had zoning issues which precluded its use for auto restoration.  The zoning issues had not

been resolved at the time the application was evaluated by the Rural Enterprise Loan Review Committee. (Exhibit 1).

At the time he applied for the RLF loan, the subject property was not the subject of a lien, as Plaintiff alleges. The prior owners of the real property defaulted on a similar loan with Tri-County Council, causing a lien to be placed on the real property. The lien was discharged through bankruptcy of the prior owner before Plaintiff's RLF submission. The Rural Enterprise Loan Review Committee had no awareness of the prior Tri-County Council loan. (Exhibit 1).

Defendants TCC and Malec are among a number of citizens and businesses that have been targeted by Plaintiff. In the last ten years, Plaintiff has filed suit, *pro se*, in nine (9) Maryland state courts and six (6) times in the United States District Court for the District of Maryland.[4] "'Federal Courts have the power and the obligation to protect themselves from abusive filing of frivolous and repetitive claims." *Riffin v. Circuit Court for Baltimore County,* 985 A.2d 612, 614, 190 Md. App. 11 (2010)(citing *McMahon v. F.M. Bank-Winchester,* 45 F.3d 426, 1994 WL 719695 (4th Cir. 1994)(unpublished)(per curium)). While Plaintiff's Complaint, through its use of colorful adjectives and conclusory accusations, attempts to paint Defendant as a predatory enterprise, it actually reveals that this matter is nothing more than an expression of Plaintiff's frustration resulting from the justifiable rejection of his loan application. Plaintiff's Complaint contains no actionable claims. It would be a waste of judicial resources to permit Plaintiff to maintain Counts VIII – XI and XXXVI – XXXVII.

---

[4] See Exhibits A and B to Defendants Cumberland Broadcasting Co., Inc. and David N. Aydelotte's Memorandum in Support of Motion to Dismiss.

## II.    STANDARD OF REVIEW

### A.    Motion to Dismiss

Defendants TCC and Malec move to dismiss this matter pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  *Munger v. United States,* 116 F.Supp.2d 672, 675 (D. Md. 2000)(citing 28 U.S.C. § 2674).  The standard for review of Motion to Dismiss is governed by Federal law.

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) challenges the legal sufficiency of a complaint.  *Presley v. City of Charlottesville,* 464 F.3d 489 (4th Cir. 2006).  In considering the propriety of a Rule 12(b)(6) dismissal, the standard of review is whether the complaint, accepting the allegations as true, allows a recovery.  *Hospital Building Co. v. Rex Hospital Trustees,* 425 U.S. 738 (1976).  The Court must assume as true all facts as plead by the plaintiff in the complaint.  *Mylan Labs., Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir. 1993).  However, complaints that recite bare legal conclusions, that are wholly devoid of facts, or that are not supported by specific facts pleaded, may warrant dismissal.  *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989)(internal citations omitted).  A Complaint may be dismissed as a matter of law if it lacks a cognizable legal theory, or it alleges insufficient facts under a cognizable legal theory.  *Munger* at 672 (D.Md. 2000).  The Court is not bound to accept plaintiff's conclusory allegations regarding the legal effect of the facts alleged.  *Id.*  "Were it otherwise, Rule 12(b)(6) would serve no function, for its purpose is to provide a defendant with a mechanism for testing the legal sufficiency of the complaint."  *United Mine Workers of Am. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085-86 (4th Cir. 1979).  Dismissal may occur when it appears beyond a reasonable doubt that plaintiffs can prove

no set of facts in support of their claim that would entitle them to relief. *Hammel v. State Farm Mut. Ins. Co.,* 114 F.Supp.2d 478, 478-79 (4th Cir. 2000).

### B. Motion for Summary Judgment

"If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." FED. R. CIV. P. 12(d). To be entitled to summary judgment, the moving party must demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also *Robinson v. Phoenix Home Life Mutual Insurance Co.,* 7 F. Supp. 2d 623, 627-628 (D. Md. 1998). The grant of summary judgment may be made based soley on the evidence placed before the Court by the parties, including any pleadings, depositions, answers to interrogatories and admissions. FED. R. CIV. P. 56(c); see also *Hartman v. AT&T Corp.*, 971 F. Supp. 952, 953 (D. Md. 1996). The evidence must be reviewed in the light most favorable to the non-moving party. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir. 1985); see also *United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962) (per curium). Only a dispute as to a material fact will preclude the entry of a grant of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). To defeat a motion for summary judgment, the opposing party must come forth and demonstrate that there exists a dispute of material fact, *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1983). The opponent of the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). "The Fourth Circuit has stated that, with regard to motions for summary judgment, the district courts have an affirmative

obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Robinson* at 627-628 (citing *Felty v. Graves-Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir. 1987)).

### III.   ARGUMENT – MOTION TO DISMISS

**A.   Counts X and XI of Plaintiff's Complaint are Fatally Flawed and Warrant Dismissal.**

**1.   Counts X and XI of Plaintiff's Complaint Fail To Set Forth A Legally Cognizable Claim.**

Count X of Plaintiff's Complaint is entitled "Misappropriation, Misdirection or Misuse Interfering With Use of Government Funds." Count XI shares the same title as Count X with the addition of the word "damages" in the title and sets forth Plaintiff's demand for damages with respect to Count X. See Plaintiff's Complaint at ¶¶141-43. Neither Count sets forth a cognizable claim. Even if Maryland recognized a civil cause of action for misappropriation or misuse, each Count contains only a single paragraph, which fails to set forth any elements of the supposed tort. Plaintiff alleges:

> That Defendants knowingly, willfully and intentionally conspired together to deny and stop funding for Plaintiff's purchase, renovations and start-up costs he was seeking in an SBA loan in order to wrongfully acquire Plaintiff's property known as 10 National Highway, Lavale, Maryland.[5]

---

[5] Plaintiff asserts that Defendants wrongfully acquired "Plaintiff's property known as 10 National Highway, Lavale, Maryland." The Property was actually owned by E. Dale Miller. On February 1, 2007, Plaintiff entered into a contract for lease of the property with the lease payments to be applied to the ultimate purchase of the Property by Plaintiff. (See Plaintiff's Complaint at 67). Plaintiff agreed to make monthly lease payments in the amount of $969.18 beginning on March 1, 2007. (See Plaintiff's Complaint at 67). Plaintiff made only the March 2008 lease payment. (See Plaintiff's Complaint at 66). Plaintiff has attached to his Complaint, a default letter from E. Dale Miller, dated January 10, 2008 which demonstrates that no further lease payments were made by Plaintiff after the March 2007 payment and that the contract for sale of the Property was never completed. (See Plaintiff's Complaint at 66). At the time Plaintiff sought a loan from Defendants, he had no actual interest in the Property.

See Plaintiff's Complaint at ¶142. Furthermore, Plaintiff's claim fails as there is no factual support for the allegation that funds were misappropriated or misused. TCC did not take any funds from the government or Plaintiff and misuse them. Rather, TCC reviewed Plaintiff's application for a RLF loan and justifiably denied it.

> **2.** **Assuming Arguendo That Counts X And XI Could Be Interpreted As An Attempt To Set Forth A Claim For Interference With Economic Relations, Plaintiff's Claim Is Fatally Flawed And Requires Dismissal.**

Count X of Plaintiff's Complaint contains only a singular conclusory allegation that Defendants TCC and Malec conspired to deny and stop financing for Plaintiff's start up business in order to wrongfully acquire Plaintiff's property. The Complaint is devoid of any factual allegation establishing that either TCC or Malec acquired any interest in Plaintiff's property. The exhibits attached to Plaintiff's Complaint belie his allegation that he had an ownership interest in the Property. (See Plaintiff's Complaint at 66-67). Assuming *arguendo*, that Count X could be construed, in a light most favorable to Plaintiff, to be an inartfully stated claim for interference with economic relations, it fails due to improper pleading and is factually and legally deficient.

In order to assert a cause of action for interference with economic relations the following elements must be alleged and supported by factual allegations:

> (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice) and (4) actual damage and loss resulting.

*Lyon v. Campbell,* 707 A.2d 850, 859-60 (Md. 1998)(citing *Willner v. Silverman,* 71 A. 962 (Md. 1909)). Furthermore, more than a simple intent to harm a plaintiff's business relationship must be alleged in order to sufficiently set forth the claim:

> [t]ortious or deliberate intent to harm a plaintiff's business relationship is not alone sufficient to support an intentional interference claim. There must also be proof that the defendant's conduct in interfering with contract or business relations was accomplished through improper means. . . the defendant's conduct must be 'independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships."

*Lyon* at 860 (internal citations omitted). Plaintiff's Complaint is completely devoid of any factual allegations that demonstrate Defendants TCC or Malec acted wrongfully or unlawfully in refusing to loan Plaintiff the RLF funds. Plaintiff asserts only that Defendants TCC and Malec refused him a loan. That act alone is not wrongful or unlawful. "Under Maryland law, one who, regardless of motive, causes harm to another merely by refusing to continue a business relationship terminable at will is not liable for that harm." *Lyon* at 861-62. Plaintiff, TCC and Malec did not enter into any financing agreement or contract. Plaintiff simply submitted an application for a loan. Neither TCC nor Malec was under any obligation to unconditionally approve the lending request simply because an application was submitted. Lenders have an obligation to thoroughly investigate and evaluate the credentials of the party seeking a loan before lending its funds. After conducting this evaluation, a lender has a right to refuse to extend financing to a party who does not meet its criteria, for example

**[ REDACTED ]**

In *Lyon v. Campbell,* supra, MQI Liquidating Corporation ("MQIL") sued John Lyon alleging that Lyon tortiously interfered with a business opportunity available to MQIL by refusing to continue as a guarantor on loans made to MQIL. MQIL sought to purchase a quarry known as Moler Limestone Quarry. MQIL had an opportunity to purchase the quarry at a 2 Million dollar discount if it executed the deal by a certain date.

MQIL could not purchase the quarry at the discounted price because just prior to the deadline, Lyon refused to personally guarantee the loans necessary to obtain the financing for the deal. The Court of Special Appeals of Maryland found that Lyon did not tortiously interfere with MQIL's business relationship. In so holding, the Court found that Lyon only:

> . . . refused to accede to a new business relationship with MQI that would have been adverse to his personal financial interests, i.e., one in which he would have personally guaranteed the same sum, but with greater exposure and thus greater risk. Lyon had no legal obligation to MQI to so agree. As such, his actions were 'with neither an unlawful purpose nor without right or justifiable cause and could not be grounds for a tortious interference claim. . .Lyon . . .only refused to do something he had a right to refuse to do. . ."

*Lyon* at 862.

As in *Lyon,* Plaintiff has failed to set forth a claim for interference with economic relations where he has alleged only that Defendants TCC and Malec refused his loan application. Plaintiff does not have an unconditional right to loan funding. Defendants should not be held liable in tort to Plaintiff as they had no legal obligation to make a loan to Plaintiff and "only refused to do something [they] had a right to refuse to do." *Id.*

**4.     Plaintiff Lacks Standing to Assert Misappropriation, Misdirection, Misuse or Interference with Government Funds.**

Defendants contend that Plaintiff does not have standing to bring a claim relating to the alleged use or misuse of government funds. Defendants adopt and incorporate by reference as if fully recited herein, the Argument contained in Section II B of the Allegany County Defendants' Motion to Dismiss.

**B.** **Plaintiff's Complaint Does Not State A Claim For Aiding And Abetting Because Plaintiff Has Failed To Allege Underlying Tortious Activity**.

In Counts VIII and IX,[6] Plaintiff claims that Defendants willfully and intentionally aided the Allegany County Commissioners in the wrongful and illegal acquisition of Plaintiff's property . . . by wrongfully denying Plaintiff an SBA loan." See Plaintiff's Complaint at ¶ 138. "Maryland recognizes that one may be held civilly liable in tort as an aider and abettor to a tort committed by another." *Saadeh v. Saadeh, Inc.,* 819 A.2d 1158, 1169 (Md. App. 2003). [A]ider and abettor liability 'is based on the civil liability imposed at common law of those who aid others in unlawful acts, and is distinct from that which imposes liability on the basis that the parties participated in a joint venture." *Alleco, Inc. v. The Harry and Jeanette Weinberg Foundation, Inc.,* 665 A.2d 1038, 1050 (Md. 1995). However, like civil conspiracy, it is not an independent tort capable of sustaining an award of damages. *Manikhi v. Mass Transit Administration,* 758 A.2d 95, 110 n. 6 (Md. 2000)("It was improper pleading to allege aiding and abetting and conspiracy in separate counts of the amended complaint, as if they were causes of action independent of an underlying tort.") "The underlying tort is the cause of action that should be set forth in a separate count. The alleged aiders, abettors, and co-conspirators are simply additional parties jointly liable with the principal perpetrator." *Id.* Plaintiff has failed to allege any tortious conduct on the part of Defendants sufficient to support such a claim. The only allegation against Defendants is that they wrongfully denied Plaintiff an RLF loan. As set forth above, there is no evidence to support that claim.

---

[6] Count IX entitled "Aiding and Abetting - Damages" does not set forth any further substantive allegations in support of Count VIII, but only requests damages in the amount of $300,000, "an amount he was trying to obtain in the SBA loan for renovation, purchase and start-up capital." See Plaintiff's Complaint at ¶ 140.

Without underlying tortious activity, Defendants cannot have aider and abetter liability. "Further, to have aider and abettor liability there must be a direct perpetrator of the tort. 'Thus, civil and aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable.'" *Id; Alleco* at 1050. Counts VIII and IX of Plaintiff's Complaint must be dismissed with prejudice for failure to state a claim.

**C. Dismissal With Prejudice Is Warranted Where Plaintiff Has Failed To Assert A Claim For Actual Damages.**

In Counts VIII and IX (Aiding and Abetting) and X and XI (Misappropriation, Misdirection, Misuse, Interferring with Use of Government Funds), Plaintiff seeks damages in the amount of $300,000 which he represents to be the "amount he was trying to obtain in the SBA loan for renovation, purchase and start-up capital." See Plaintiff's Complaint at 140 and 143. Plaintiff seeks to recover, as damages, the proceeds of the RLF loan for which he applied and was denied. Plaintiff has failed to demonstrate the requirement of actual harm or injury. The allegations in Plaintiff's complaint fail to set forth any basis to find that Plaintiff sustained any damages as a result of the alleged conduct of Defendants. As recognized by the Court in *Lloyd v. General Motors Corp.,* 916 A.2d 257, 264 (Md. 2007), an essential element of Plaintiff's claims is that he sustained damage as a result of Defendant's conduct. See also, *Prudential Securities, Inc. v. E-Net, Inc.*, 780 A.2d 359 (Md. App. 2001); *Polakoff v. Turner,* 869 A.2d 837 (Md. 2005). Accordingly, Counts VIII and IX and X and XI of Plaintiff's Complaint must be dismissed for failure to state a claim.

**D.      Plaintiff's Claim for "Conspiracy Against Rights, Theft by Scheme" alleged in Counts XXXVI and XXXVII are Fatally Flawed and Warrant Dismissal for Failure to State a Claim.**

In Count XXXVI, setting forth Plaintiff's claim for "Conspiracy Against Rights, Theft by Scheme"[7] it is asserted in a singular paragraph that

> all defendants listed in the complaint either were directly or indirectly contributing to a conspiracy against Plaintiff's right in the fraudulent theft by scheme of Plaintiff's property known as 10 National Hwy Lavale, Md., and should be investigated by the U.S. Department of Justice and the State Attorney General's office.

See Plaintiff's Complaint at ¶ 193.  Plaintiff has failed to state a cause of action upon which relief may be granted where (1) Plaintiff has set forth no facts alleging an agreement to conspire, (2) a conspiracy between a corporation and its agents is a legal impossibility (3) civil conspiracy is not recognized as an independent tort under Maryland Law and (4) Plaintiff has failed to allege damages.

**1.      Plaintiff Has Failed To State A Cause Of Action For Conspiracy In The Absence Of Any Allegation Of An Agreement Among The Defendants.**

Under Maryland law, "[a] civil conspiracy is a combination of two or more persons by an agreement or understanding to accomplish an unlawful act or to use unlawful means to accomplish an act not in itself illegal, with the further requirement that the act or the means employed must result in damages to the plaintiff."  *BEP, Inc. v. Atkinson,* 174 F.Supp.2d 400, 408 (D. Md. 2001)(citing *Green v. Washington Sub. San. Commission,* 269 A.2d 815, 824 (1970)).  To withstand a Rule 12(b)(6) challenge, Plaintiff must allege a clear agreement to conspire.  "A clear agreement to conspire is

---

[7] Count XXXVII entitled "Conspiracy Against Rights Damages" does not set forth any further substantive allegations in support of Count XXXVI, but only requests punitive damages in an unspecified amount.

necessary because the 'independent acts of two wrongdoers do not make a conspiracy.'" *Hill v. Brush Engineered Materials, Inc.,* 383 F.Supp.2d 814, 821 (D. Md. 2005)(citing *Murdaugh Volkswagen, Inc. v. First Nat. Bank of South Carolina,* 639 F.2d 1073, 1076 (4th Cir. 1981)).

Plaintiff's basic contention in Count XXXVI is that the improper or unlawful objective of the alleged conspiracy was to defraud him and dispossess him of his real property.[8] However, nowhere in the 199 paragraphs which comprise Plaintiff's Complaint is it alleged that Defendant TCC or Defendant Malec agreed to conspire with each other or anyone else to harm Plaintiff. "Claims of conspiracy to commit fraud must satisfy the particularity requirements of Rule 9(b)." *Adams v. NVR Homes, Inc.,* 193 F.R.D. 243, 250 (D. Md. 2000). Plaintiff has merely asserted that all defendants listed in the complaint either directly or indirectly contributed to a conspiracy to defraud Plaintiff. Plaintiff's claim is fatally flawed where fails to identify with particularity the nature of the agreement and the role of Defendants TCC and Malec. Plaintiff has generally swept all Defendants together by alleging generally that Defendants "were directly or indirectly contributing to a conspiracy," without identifying which Defendant took what action. Courts have consistently frowned upon such practice. See Plaintiff's Complaint at ¶ 193. "A complaint that generally alleges a fraudulent scheme without clearly specifying which defendant played which role fails to comport with the rule." *Kerby v. Mortgage Funding, Corp.,* 992 F.Supp. 787, 799 (D. Md. 1998)(citing *Wang Laboratories, Inc. v. Burts,* 612 F.Supp. 441, 445 (D. Md. 1984).

---

[8] Despite Plaintiff's contention that he had an interest in the real property, the evidence submitted by Plaintiff with his Complaint contradicts that allegation and irrefutably demonstrates that E. Dale Miller was the owner of the Property and that Plaintiff had already defaulted on his lease agreement. See Plaintiff's Complaint at 66-67.

Plaintiff's Complaint utterly fails to offer any supporting explanation or facts as to how, when or where the alleged conspiracy was formed or accomplished. "Complaints that recite bare legal conclusions, that are wholly devoid of facts, or that are not supported by specific facts pleaded, may warrant dismissal." *Revene v. Charles County Comm'rs,* 882 F.2d 870, 873 (4th Cir. 1989)(internal citations omitted). A Complaint may be dismissed as a matter of law, if it lacks a cognizable legal theory, or it alleges insufficient facts under a cognizable legal theory. *Munger v. United States,* 116 F.Supp.2d 672, 672 (D. Md. 2000). Plaintiff's Complaint provides no specific factual basis, other than the conclusory allegation that, Defendants contributed to a conspiracy, to support its claim for conspiracy. Plaintiff's claim warrants dismissal with prejudice as it is alleged in mere conclusory language and fails to demonstrate the necessary predicate of a clear agreement to conspire.

> **2.** **A Claim For Civil Conspiracy Premised On A Conspiracy Between A Corporation And Its Agents Is Not Legally Cognizable.**

Plaintiff's Complaint lacks any allegations as to how, when or where the alleged conspiracy was formed or accomplished. However, even assuming *arguendo,* that Plaintiff's Complaint could be interpreted to allege that Defendants TCC and its employee, Marc Malec conspired with each other, Plaintiff's claim must fail. Where an agency/employment relationship exists between the alleged co-conspirators, a conspiracy cannot legally exist. "The law is well-settled . . . that a conspiracy between a corporation and its agents, acting within the scope of their employment, is a legal impossibility." *Marmott v. Maryland Lumber Co.,* 807 F.2d 1180, 1184 (4th Cir. 1986), *cert denied,* 482 U.S. 929 (1987)(citing *Nelson Radio and Supply Co. v. Motorola,* 200 F.2d 911, 194 (5th

Cir. 1952)). Known as the doctrine of intracorporate conspiracy, Federal Courts have held it to bar a claim for conspiracy "because a corporation can act only through its officers and agents, and because no entity can conspire with itself, a corporate entity cannot conspire with its own officers and employees." *Sadighi v. Daghighfekr,* 36 F.Supp.2d 279, 297 (D.S.C. 1999). Accordingly, assuming *arguendo,* that Plaintiff's Complaint can be construed to allege a between TCC and its employee, Marc Malec, Plaintiff's claim fails to state a claim for civil conspiracy as a matter of law.

3. **Plaintiff's Claim For Civil Conspiracy Cannot Withstand A 12(B)(6) Dismissal As The Claim Is Not Recognized As An Independent Tort Under Maryland Law.**

Plaintiff's claim for civil conspiracy must also fail because Maryland law does not recognize civil conspiracy as an independent tort. "'Conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *NRT Mid-Atlantic, Inc. v. Innovative Properties, Inc.,* 797 A.2d 824, 838 (Md. 2002)(citing *Alexander & Alexander v. B. Dixon Evander & Assocs.,* 650 A.2d 260, 265 n. 8 (Md. 1994)). "Conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff." *Hill v. Brush Engineered Materials, Inc.,* 383 F.Supp.2d 814, 821 (D. Md. 2005)(citations omitted). "The underlying tort is the cause of action that should be set forth in a separate count. The alleged aiders, abettors, and co-conspirators are simply additional parties jointly liable with the principal perpetrator." *Manikhi v. Mass Transit Admin.,* 758 A.2d 95, 109 n. 6 (Md. 2000). Plaintiff has not adequately alleged any underlying tortious activity on the part of Defendants TCC or Malec sufficient to support a finding that they should be held jointly and severally liable as co-conspirators with any alleged principal perpetrator.

Even assuming, *arguendo,* that Plaintiff's claims for aiding and abetting (Counts VIII and IX) and Misappropriation, misdirection or misuse interfering with use of government funds (Counts X and XI) asserted against TCC and Malec could be considered tort claims sufficient to support a conspiracy theory of liability, as set forth above, those claims fail to state a claim and cannot survive.

### 4. Plaintiff Has Failed To Satisfy The Pleading Requirement for Punitive Damages.

In Count XXXVII (Conspiracy Against Rights, Theft By Scheme – Damages), Plaintiff seeks punitive damages in an undisclosed amount. See Plaintiff's Complaint at ¶ 195. In Maryland, punitive damages require a showing of actual malice, i.e., malice characterized by evil motive, intent to injure, ill will or fraud. *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs. Inc.*, 650 A.2d 260 (Md. 1994). An allegedly aggrieved party must plead and prove "facts showing actual malice." *Bell v. Heitkamp*, 728 A.2d 743, 752 (Md. App. 1999) (emphasis added). In *Scott v. Jenkins*, 690 A.2d 1000 (Md. 1997), the Court of Appeals of Maryland held:

> We have lately, and at great length, discussed the necessary prerequisites to a punitive damages award. Lest there be any remaining doubt, in order to recover punitive damages in any tort action in the State of Maryland, facts sufficient to show actual malice must be pleaded and proven by clear and convincing evidence[.]

*Id.* at 1003-04.

An act, though wrongful in itself, that is committed in the honest assertion of a supposed right or in the discharge of duty, or without evil or bad intention, is no ground on which punitive damages can be awarded. *Food Fair Stores, Inc. v. Hevey*, 338 A.2d 43, 47 (Md. 1975). Plaintiff's claim for punitive damages fails where the Complaint is

completely devoid of any allegation of actual malice on the part of Defendants TCC or Malec.

> **5.** **Plaintiff's Claim Must Be Dismissed As He Seeks A Remedy Not Actionable At Law.**

In Count XXXVI, Plaintiff seems to suggest that this Court should order the U.S. Department of Justice and the State Attorney General's Office to conduct an investigation of an alleged scheme to defraud Plaintiff of his real property. Plaintiff's claim must be dismissed as there are no grounds for the relief requested. Review of federal legal authority produced no authority conferring jurisdiction on this Court to order such relief.

> **E.** **Dismissal of Plaintiff's State Common Law Claims With Prejudice Is Warranted.**

Plaintiffs state law claims asserted against Defendants TCC and Malec are all fatally flawed and warrant dismissal. This Court is entitled to dismiss Plaintiff's claims against Defendants TCC and Malec with prejudice in order to prevent these frivolous claims from being re-filed in state court. *Owen v. Carpenter's Dist. Council,* 161 F.3d 767, 773 (4th Cir. 1998)(quoting *Childers v. Chesapeake and Potomac Tel. Co.,* 881 F.2d 1259, 1267 (4th Cir. 1989)("where the complaint . . . plainly fails to state a cause of action under state law, it is open to the federal court to dismiss it."). Dismissal with prejudice is in the interests of judicial economy. This is particularly so, where Plaintiff Taccino has demonstrated himself to be excessively litigious.

## IV. ARGUMENT – MOTION FOR SUMMARY JUDGMENT

> **A.** **Defendant Malec Did Not Participate In the Loan Review Process.**

There is no material dispute of fact and the undisputed evidence demonstrates that Defendants TCC and Malec did not wrongfully deny Plaintiff financing for his project.

1.    **Mark Malec Has No Liability For Conspiracy, Aiding And Abetting Or Misappropriation Where The Evidence Is Undsiputed That He Took No Action In Reference To Plaintiff's Loan Application.**

Plaintiff has sued Defendant Malec in six counts which essentially attempt to set forth three causes of action: (1) aiding and abetting (Counts VIII and IX); (2) misappropriation, misuse or interference with use of Government funds (Counts X and XI) and (3) Conspiracy (Counts XXXVI and XXXVII). Plaintiff asserts that Defendant Malec, as a Director of TCC, wrongfully denied him a loan to finance his start-up business and that his refusal to loan Plaintiff government funds was either part of a conspiracy to deprive Plaintiff of his property or was designed to aid and abet others to deprive Plaintiff of his property. See Plaintiff's Complaint at ¶¶ 27, 38, 41, 138, 142 and 193.[9]  Mark Malec has never held the position of Director of TCC. (Exhibit 1). Rather, in 2007, Mark was employed as a Business Counselor for Tri-County Council for Western Maryland, Inc. (Exhibit 1). Plaintiff, William A. Taccino applied for a loan through TCC's Revolving Loan Fund Program ("TCC RLF") on April 11, 2007. (Exhibit 1). The TCC RLF includes the Rural Enterprise Loan Fund, the fund to which Plaintiff's application was submitted. (Exhibit 1). Plaintiff's loan application was reviewed by the Rural Enterprise Loan Review Committee and was denied on June 22, 2007

**[ REDACTED ]**          (Exhibit 1). Defendant Malec was never a member of the Rural Enterprise Loan Review Committee. (Exhibit 1). The evidence demonstrates that Defendant Malec had no involvement in the process of evaluating the loan application or in making the determination to deny Plaintiff's request for a loan.

---

[9] Defendant Malec is referenced in only two (2) of the eighty-six (86) paragraphs that comprise the Statement of Facts set forth in Plaintiff's Complaint. See Plaintiff's Complaint at 38 and 41.

The Affidavit of Leanne, Director of TCC, establishes that there is no genuine issue as to any material fact and Defendant Malec is entitled to judgment as a matter of law.

**B.** **Plaintiff's Loan Application Was Denied Because He Was Assessed To Be A Poor Credit Risk.**

Plaintiff contends that Defendants wrongfully denied his application for a loan to fund his start-up antique car restoration business. See Plaintiff's Complaint at ¶¶ 138 and 142. Plaintiff has not provided any factual support for his conclusory allegation that his loan request was wrongfully refused. Defendant TCC had only a duty to use reasonable care in the processing of Plaintiff's loan application. *Jacques v. First National Bank,* 515 A.2d 756, 756 (Md. 1986). The undisputed evidence in this matter demonstrates that Defendant TCC acted with reasonable care in evaluating Plaintiff's loan application and had substantial justification to support its decision to deny the loan request.

On February 1, 2007, Plaintiff entered into an agreement E. Dale Miller providing for Plaintiff to purchase the subject property from Mr. Miller for the sum of $125,000.00. See Plaintiff's Complaint at 67. The sale was to be financed by Mr. Miller and Plaintiff was obligated to pay $969.18 in 240 monthly installments beginning March 1, 2007. See Plaintiff's Complaint at 67. In addition, Plaintiff agreed to seek to refinance the loan by Mr. Miller by obtaining other financing for the sale. See Plaintiff's Complaint at 67. Plaintiff made the March payment. See Plaintiff's Complaint at 66. Plaintiff breached his agreement with Mr. Miller and defaulted on his loan from Mr. Miller as he made no further payments toward the purchase of the subject property after March 2007. See Plaintiff's Complaint at 66.

Notwithstanding the breach and the default, on April 11, 2007, Plaintiff submitted to Defendant TCC, a loan application for the Revolving Loan Fund Program ("RLF").

(Exhibits 1 and 1A). The RLF includes the Rural Enterprise Loan Fund, the fund to which Plaintiff's application was submitted. (Exhibit 1). He sought a loan in the amount of $205,010.00 with a 15-year term. (Exhibit 1A). Plaintiff's RLF application was reviewed by the Rural Enterprise Loan Review Committee. (Exhibit 1). The staff recommendation to deny Plaintiff's RLF application was affirmed by a majority of the members of the committee and a letter of denial was sent to Plaintiff on June 22, 2007.

**[ REDACTED ]**

The undisputed evidence supports Defendant TCC's decision to reject Plaintiff's application for a loan. (Exhibits 1 and 1C).

**[ REDACTED ]**

**[ REDACTED ]**

Defendant TCC had justifiable grounds on which to base its decision to deny Plaintiff's loan application.

**[ REDACTED ]**

The evidence in this case demonstrates that Defendant exercised that degree of care that a reasonably prudent bank would have exercised under the same or similar circumstances. There is no evidence that Defendant TCC acted in concert with any other person to deny Plaintiff's loan as part of an effort to ruin Plaintiff's business plan. Furthermore, there is no evidence to demonstrate that Defendant TCC misappropriated, misused or interfered with the use of government funds. All of the evidence demonstrates that TCC acted responsibly in ensuring that it did not make risky loans.

## V.      CONCLUSION

For the reasons asserted in Defendants Tri-County Council for Western Maryland, Inc. and Mark Malec's Motion to Dismiss and Memorandum of Law in Support thereof, Defendants TCC and Malec respectfully request that this Honorable Court grant Defendants' Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice and without leave to amend. In the alternative, Defendants TCC and Malec respectfully request that this Honorable Court grant Defendant's Motion for Summary Judgment and enter judgment in favor of Defendants TCC and Malec and against Plaintiff William Taccino and for such other and further relief as the nature of this case requires.

Respectfully submitted,

FERGUSON, SCHETELICH & BALLEW, P.A.

By: _____/s/_____
       Robert L. Ferguson, Jr.
       (signed by Michele Z. Blumenfeld
       with permission of Robert L.
       Ferguson, Jr.)
       rferguson@fsb-law.com
       Federal Bar No.: 00777


By: _____/s/_____.
       Michele Z. Blumenfeld
       mzblumenfeld@fsb-law.com
       Federal Bar No.: 25063
       100 S. Charles Street, Suite 1401
       Baltimore, MD 21201-2725
       (410) 837-2200
       *Attorneys for Defendants Tri-County*
       *Council for Western Maryland, Inc.*
       *and Mark C. Malec*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of February, 2010, a copy of the foregoing was **electronically filed**, with notice to:

Kevin Karpinski, Esquire
Sandra D. Lee, Esquire
Karpinski, Colaresi & Karp
120 East Baltimore Street
Suite 1850
Baltimore, Maryland 21202
*Attorneys for Defendants Allegany County,*
*James J. Stakem, Robert M. Hutcheson, Dale*
*R. Lewis, Jerry W. Michael, David A. Eberly,*
*Gary E. Moore, William M. Rudd and Barry*
*R. Levine*

Jeffrey S. Getty, Esquire
J. Matthew Gilmore, Esquire
Geppert, McMullen, Paye & Getty
21 Prospect Square
Cumberland, Maryland 21502
*Attorneys for LaVale Civic Improvement,*
*Paul J. Yockus, John M. Miller, Personal*
*Representative of the Estate of E. Miller, and*
*Kenneth R. "Butch" Joy*

James B. Astrachan, Esquire
Daniel P. Doty, Esquire
Astrachan Gunst Thomas, P.C.
217 East Redwood Street, 21st Floor
Baltimore, Maryland 21202
*Attorneys for Cumberland Broadcasting*
*Company, Inc. and David N. Aydelotte*

and a copy was sent by **first class mail, postage prepaid** to:

Mr. William A. Taccino
402 Pine Avenue
Cumberland, Maryland 21502
*Plaintiff, Pro se*

_____/s/_____.
Michele Z. Blumenfeld